UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

RED EAGLE LAW, L.C.,

Plaintiff,

v.

MARCO RUBIO, *in his official capacity as Secretary of State*,

Defendant.

Case No.: 26-cv-04738-JO-VET

**ORDER DENYING MOTION TO STAY PRELIMINARY INJUNCTION**

## I. BACKGROUND

The Immigration and Nationality Act ("INA") requires the United States Department of State ("State Department") to implement the Diversity Visa Program every year, making up to 55,000 visas available to individuals from countries with historically low rates of immigration to the United States. *See* 8 U.S.C. §§ 1151(e), 1153(c). The State Department ordinarily holds a lottery to select eligible individuals to receive visas before the start of each fiscal year, and the lottery winners then apply during the fiscal year for which they were selected. *See* 22 C.F.R. § 42.33. For the 2027 Diversity Visa Program, the lottery registration period should have occurred in October or November of 2025. However, the State Department failed to open the lottery registration period for almost a year, even after fiscal year 2027 began on October 1, 2026, effectively cancelling the program. Plaintiff Red Eagle Law, L.C., an immigration law firm that represents Diversity Visa applicants, brought this action challenging the State Department's cancellation of the 2027 Diversity Visa Program as arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), among other grounds. *See* Dkt. 1.

On October 14 and 19, 2026,[1] the Court granted Plaintiff's motion for preliminary injunction, ordering the State Department to open registration for the 2027 Diversity Visa Program and administer the program in accordance with federal immigration laws. *See* Dkts. 13, 21, 24. Because the State Department had already delayed registration for the 2027 Diversity Visa Program for approximately eleven months, the Court imposed expedited deadlines to compel belated performance of its statutory obligations and preserve sufficient time for Diversity Visas to be issued before the end of fiscal year 2027. These deadlines were necessary because the annual allotment of 55,000 Diversity Visas does not carry over to subsequent fiscal years, and any visas not issued by September 30, 2027 would be lost, contrary to Congress's intent of encouraging immigration from historically underrepresented countries. *See* 8 U.S.C. § 1154(a)(1)(I)(ii)(II); 22 C.F.R. § 42.33(a)(1), (d), (f); *see also* Cong. Rsch. Serv., *The Diversity Immigrant Visa Program* (Oct. 15, 2019), https://www.congress.gov/crs-product/R45973 (explaining that Congress added the diversity immigrant category to the INA "to foster new, more varied migration from other parts of the world").

The State Department appealed the preliminary injunction and now moves to stay the injunction pending appeal. *See* Dkts. 25, 26. In opposing the preliminary injunction, the State Department argued that its failure to conduct registration before fiscal year 2027 began relieved it of any obligation to administer the 2027 Diversity Visa Program at all. *See* Dkt. 15. Now, it argues that the expedited deadlines necessitated by its own delay impose substantial administrative burdens and costs that justify staying the injunction—the effect of which would be to extinguish its obligation to implement the 2027 Diversity Visa Program altogether. *See* Dkt. 26; *see also* 8 U.S.C. § 1154(a)(1)(I)(ii)(II); 22 C.F.R. § 42.33(f) ("Under no circumstances will [diversity] immigrant visa numbers be allotted after midnight of the last day of the fiscal year for which the petition was submitted and

---

[1] Following its bench ruling on October 14, 2026, the Court issued a written order explaining the bases for its decision. *See* Dkt. 24.

approved."). For the reasons explained below, the Court denies the Department's motion to stay the preliminary injunction pending appeal.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 62(d), a district court has discretion to stay an injunction pending appeal. A party seeking a stay pending appeal bears the burden of showing that a stay is justified based on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted). The first two factors are "the most critical," and courts consider the remaining factors only after the applicant satisfies the first two. *Id.* at 434–35. "A stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* at 433 (citation omitted).

To demonstrate likelihood of success on the merits, a party does not need to demonstrate that success on appeal is more likely than not, but it must establish a substantial case on the merits at minimum. *See Leiva-Perez v. Holder*, 640 F.3d 962, 967–68 (9th Cir. 2011) (per curiam). In complicated cases where it is difficult to determine whether the movant is likely to prevail, a stay may be warranted if the movant raises serious legal questions going to the merits and the balance of hardships tips sharply in its favor, provided the remaining requirements are satisfied. *See Fed. Trade Comm'n v. Qualcomm Inc.*, 935 F.3d 752, 755–56 (9th Cir. 2019) (per curiam). Regardless of the applicant's likelihood of success on the merits, it must demonstrate that irreparable harm is probable, rather than merely possible, absent a stay. *See Doe #1 v. Trump*, 957 F.3d 1050, 1058–60 (9th Cir. 2020).

## III. DISCUSSION

### A. Likelihood of Success on Appeal

For the reasons stated in its October 19, 2026 written order, the Court concludes that the State Department has not established a likelihood of success on appeal, notwithstanding

the fact that the Court denied the Plaintiff's requested temporary restraining order and expressed concerns about whether Plaintiff's lawsuit met the zone-of-interests test. *See* Dkt. 12. First, the Court initially denied Plaintiff's application for a temporary restraining order largely on the ground that, while expedited resolution on a preliminary injunction basis was required, immediate relief through a temporary restraining order was not necessary because any subsequent injunction would still require belated performance of the State Department's overdue statutory obligations. Second, although the State Department's arguments regarding the zone-of-interests test initially gave the Court pause, the Court ultimately rejected those arguments after carefully reviewing the relevant case law. As explained in the Court's written order, the State Department's position rested on an erroneous analysis of the zone-of-interests test—one narrower and more stringent than required by law and inconsistent with Ninth Circuit precedent. *See Port of Astoria, Oregon v. Hodel*, 595 F.2d 467, 476 (9th Cir. 1979); *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 768–69 (9th Cir. 2018); *City & Cnty. of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 981 F.3d 742, 755 (9th Cir. 2020); *see also* Dkt. 24 at 11–16.

Nevertheless, the State Department has raised at least colorable and valid legal questions regarding (1) whether an immigration law firm's economic interest in providing paid representation to Diversity Visa applicants falls within the zone of interests protected by the relevant statute and (2) whether the Court has equitable authority to compel belated performance of the State Department's statutory obligations.[2] Even assuming these questions rise to the level of "serious legal questions," a stay is not warranted here because

---

[2] The State Department's argument that Plaintiff lacks Article III standing because it cannot establish that the Diversity Visa Program was enacted to protect Plaintiff's interest in earning legal fees is contrary to Supreme Court precedent distinguishing the injury-in-fact requirement from the zone-of-interests inquiry. *See Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 395 (1987); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) ("A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act[.]"); *see also* Dkt. 24 at 9, n. 7.

the State Department has not established that it is likely to suffer irreparable injury absent a stay, and the remaining considerations of injury to Plaintiff and the public interest strongly favor denial.

**B. Irreparable Harm**

The Court rejects each of the State Department's arguments for irreparable injury as set forth below. First, the State Department contends that the expedited timeframes in the Court's orders require compliance with the law before it can obtain appellate review from the Ninth Circuit to try to avoid that obligation. *See* Dkt. 26 at 4–5; *Doe #1*, 957 F.3d at 1059 (explaining that in assessing whether the government has demonstrated irreparable injury at this juncture, the government has the burden of showing that irreparable injury is likely to occur during the period before the appeal is decided). The State Department, however, identifies no injury, irreparable or otherwise, arising from being ordered by the Court to implement exactly what existing federal laws require. Indeed, the State Department does not dispute that the injunction requires it to administer the Diversity Visa Program in accordance with applicable federal immigration laws.

Nor has the State Department established that the December 3 deadline for notifying lottery winners would prevent meaningful appellate review absent a stay. By contrast, granting a stay would effectively cancel the congressionally mandated 2027 Diversity Visa Program because the lottery registration period, selection of lottery winners, visa application process, and issuance of visas must be completed by September 30, 2027. Contrary to the State Department's argument, the December 3, 2026 deadline for the notification of lottery winners is not an irreversible final action. The expedited selection of lottery winners by December 3, 2026 is only an initial step in the Diversity Visa process and does not itself result in the issuance of Diversity Visas. In fact, in recent years, the State Department has selected approximately 100,000 individuals for the opportunity to apply for a maximum of 55,000 available Diversity Visas based on the understanding that not every selectee will qualify for, pursue, or complete the visa process. *See* Dkt. 24 at 3. Individuals selected through the lottery must still submit visa applications and satisfy the

eligibility requirements imposed by federal immigration laws before they can receive Diversity Visas, and all such visas must be issued before the close of fiscal year 2027 on September 30, 2027. *See* 8 U.S.C. § 1154(a)(1)(I)(ii)(II); *id.* § 1182(a); 22 C.F.R. § 42.33(a)(1), (d), (g). In other words, nothing final or irreversible with respect to the issuance of Diversity Visas will occur by December 3, 2026, whereas a stay would effectively eliminate the 2027 Diversity Visa Program.

Second, the State Department argues that the expedited December 3, 2026 deadline for selecting and notifying lottery winners means that it cannot conduct sufficient pre-deployment testing of its systems and screen applicants "without diverting available agency resources" from other priorities. *See* Dkt. 26 at 5. The Ninth Circuit has held that the diversion of personnel and resources to comply with an injunction does not constitute irreparable injury, particularly when such administrative burdens arise from the need to remedy circumstances of the Government's own making. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) ("That the government's asserted harm is largely self-inflicted 'severely undermines' its claim for equitable relief.") (citation omitted). The State Department has not established that it cannot perform its systems testing by the required timeframes, so long as it devotes sufficient additional resources. Nor has it shown that it cannot address its preselection screening concerns on a rolling basis during the month-long registration period during which it receives entries for the lottery—reviewing entries for completeness, verifying photographs, using facial recognition technology to identify duplicate entries, and checking databases to identify fraudulent entries or individuals who may pose security concerns. Dkt. 26 at 5–6; Dkt. 26-2, John Armstrong Decl. ("Armstrong Decl.") ¶¶ 8–10. If the State Department requires additional time after the lottery registration period ends in order to complete its ordinary procedures, it may request that the Court modify the December 3, 2026 date. The Court has adjusted its injunction accordingly. *See* Dkt. 31. The Court, however, notes that the State Department stipulated to the December 3, 2026 date it now challenges. *See* Dkt. 22 ("Joint Motion to Modify Injunction"). In other words, rather than raising with the Court any feasibility concerns or

advancing another set of dates, it invokes those deadlines as justification for failing to comply with the Court's order.

To strengthen its argument that it will experience an irreparable injury without a stay, the State Department generally raises the specter of potential security breaches and the risk of issuing a Diversity Visa to an individual who poses a national security threat. Dkt. 26 at 5–6; Armstrong Decl. ¶¶ 12–15. First, the State Department has not established that a security breach is likely to occur rather than a mere possibility, especially if it devotes the resources to conducting its testing on an expedited basis. Second, the State Department has not established that it could not conduct its usual screening procedures on an expedited basis, as discussed above, or explained why the alleged risks could not be identified during the adjudication process after a lottery winner submits a visa application, but before a visa is issued.

Although the State Department has identified challenges in complying with the Court's orders, some genuine and others speculative, it has not established that these challenges are likely to cause irreparable injury warranting suspension of the entire injunction pending appeal—particularly where such a stay would extinguish the State Department's obligation to implement the 2027 Diversity Visa Program at all, and therefore inflict irreparable harm on Plaintiff and undermine the public interest.

**C. Injury to Plaintiff and the Public Interest**

As discussed in the Court's written order, a stay pending appeal would threaten Plaintiff with the permanent loss of prospective clients and associated revenue from the 2027 Diversity Visa Program—business opportunities that cannot be recovered in subsequent fiscal years and that can only be remedied by reopening the program. *See* Dkt. 24 at 19–20. Grave public interest concerns also weigh against granting a stay. Given the limited time remaining to conduct lottery registration, select lottery winners, and issue Diversity Visas before the fiscal year ends on September 30, 2027, a stay pending appeal would risk effectively nullifying the injunction altogether. Because unused Diversity Visas cannot be carried over into subsequent fiscal years, further delay could permanently

eliminate the immigration opportunities Congress made available for fiscal year 2027. *See* 8 U.S.C. §§ 1151(e), 1153(c), 1154(a)(1)(I)(ii)(II). Granting a stay under these circumstances would risk allowing the State Department's failure to timely comply with its statutory obligations to become the very justification for relieving it of those obligations altogether. Such an outcome violates the public's strong interest in ensuring that the executive branch complies with federal law and that Congress's statutory mandates are not frustrated by executive inaction. *See East Bay Sanctuary Covenant*, 932 F.3d at 779 (9th Cir. 2018) ("But the public also has an interest in ensuring that 'statutes enacted by [their] representatives' are not imperiled by executive fiat.") (citation omitted).

Accordingly, these challenges do not establish irreparable injury such that the State Department should be relieved of its statutory obligation to administer the Diversity Visa Program altogether.

## IV. CONCLUSION

For the reasons set out above, the Court DENIES the State Department's *ex parte* motion to stay the preliminary injunction pending appeal [Dkt. 26].

**IT IS SO ORDERED.**

Dated: October 21, 2026



Honorable Jinsook Ohta
United States District Judge